

**FILED**

DEC 10 2015 $\mathcal{DC}$

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.  14 CR 326 |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| DAVID GODWIN, | ) | Code, Sections 1001 and 1343 |
| JOHN COLETTI, | ) | |
| ANTHONY ROTH | ) | **SUPERSEDING INDICTMENT** |

The SPECIAL AUGUST 2015 GRAND JURY charges:

**JUDGE ZAGEL**

**MAGISTRATE JUDGE COX**

1.    At times material to the indictment:

    a.    ContinuityX Solutions, Inc. had offices in Metamora, Illinois, and provided computer and telecommunication services, including networked computer server space and consulting services.

    b.    Defendant DAVID GODWIN was the chief executive officer, president, and chairman of the board for ContinuityX.

    c.    Defendant ANTHONY ROTH was the chief financial officer for ContinuityX.

    d.    Defendant JOHN COLETTI was a sales representative for ContinuityX.

    e.    Chief Financial Officer 2 took over from defendant ANTHONY ROTH in approximately August 2012.

1

f.  Telecommunications Company A was a global company headquartered in the United States, and provided telecommunications services throughout the world. Telecommunications Company A and ContinuityX entered an agreement under which ContinuityX earned a commission payment from Telecommunications Company A for referring customers that contracted for services with Telecommunications Company A. The commission payment paid to ContinuityX by Telecommunications Company A was a percentage of each contract's total value.

g.  In order for a referred customer to be approved by Telecommunications Company A for a contract for services, the contract and the customer had to be reviewed and approved by Telecommunications Company A's credit team. In certain cases where there was a need to mitigate the credit risk of a particular customer, the credit team would require the customer to pay a security deposit, often the equivalent of nonrecurring costs to Telecommunications Company A to set up the service and the cost of two months of the contracted services.

h.  Customers A, `B, and C were among the companies that ContinuityX referred to Telecommunications Company A. Each signed a contract for certain services with Telecommunications Company A. These contracts were each reviewed and approved by the credit team for Telecommunications Company A.

i.  Co-Schemer A was the owner of Customer A, and caused Customer A to enter service contracts with Telecommunications Company A.

2

j.      Telecommunications Company B was a global company that had offices in Hong Kong, and provided telecommunications services throughout the world. Telecommunications Company B entered into a joint marketing agreement with ContinuityX under which ContinuityX billed Telecommunications Company B for services that ContinuityX provided to Telecommunications Company B's customers.

k.      Employee 1 and Employee 2 were two employees that worked for Telecommunications Company B.

l.      Employee 3 was an employee that worked for Telecommunications Company A and was responsible for collecting money owed to Telecommunications Company A.

m.      Account receivable financing, also known as factoring, was the provision to an account creditor of funds in the amount of a percentage of an outstanding account receivable, such as an invoice, in return for the right to collect from the account debtor the entire amount of the account receivable.

n.      Victim Companies 1 and 2 provided accounts receivable financing and had offices in Atlanta, Georgia, and Baltimore, Maryland, respectively.

o.      Defendants DAVID GODWIN and ANTHONY ROTH entered an agreement with Victim Company 2 in which they personally guaranteed money

3

provided to ContinuityX as part of an account receivable financing agreement entered between ContinuityX and Victim Company 2.

        p.    ContinuityX was an issuer with the Securities and Exchange Commission pursuant to the Securities and Exchange Act and required to file periodic reports, including Form 10-Q, containing financial statements with the SEC.

        q.    Auditing Firm assisted ContinuityX with its financial statements, including the periodic financial statements filed with the SEC.

        r.    ContinuityX maintained computer servers in Chicago, Illinois for purposes including sending and receiving of email messages using ContinuityX email accounts.

    2.    Beginning by at least October 2011, and continuing until in or about February 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN,
JOHN COLETTI, and
ANTHONY ROTH

defendants herein, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money from Telecommunications Company A, Victim Company 1, and Victim Company 2 by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

4

**Telecommunications Company A**

3.     It was part of the scheme that defendants DAVID GODWIN and ANTHONY ROTH caused customers, including Customers A, B, and C, to apply for service contracts with Telecommunications Company A and other telecommunications companies knowing that the customers did not need the services as part of their company operations and did not intend to pay for the services.

4.     It was further part of the scheme that defendants DAVID GODWIN and ANTHONY ROTH induced customers, including Company A, B and C, to apply for services from Telecommunications Company A by agreeing to provide these customers with a portion of the commission payment made to ContinuityX by Telecommunications Company A on the customer's contract and by representing that the customer would have no financial responsibility under the contract, when defendants DAVID GODWIN and ANTHONY ROTH knew that the customers would be financially responsible under the contract.

5.     It was further part of the scheme that defendants DAVID GODWIN and ANTHONY ROTH provided false financial information on behalf of customers referred by ContinuityX to Telecommunications Company A and other telecommunications companies in order to fraudulently obtain contract approvals, the reduction or elimination of security deposits, and commission payments from Telecommunications Company A and other telecommunications companies.

5

6.     It was further part of the scheme that defendant DAVID GODWIN instructed defendant ANTHONY ROTH to falsely alter or create completely fictitious financial information for certain customers, including Customers A, B and C, in order to make the customer appear larger and for the purpose of submitting this false information to Telecommunications Company A and other telecommunication companies as part of the application for services by the customer.

7.     It was further part of the scheme that defendant ANTHONY ROTH either altered financial information submitted by a customer or manufactured false financial information for customers to make those customers appear more creditworthy.   Defendant ANTHONY ROTH then provided this false financial information to defendant DAVID GODWIN and others at ContinuityX for the purposes of submitting the false financial information to Telecommunications Company A and other telecommunications companies.

8.     It was further part of the scheme that defendant ANTHONY ROTH recruited Co-Schemer A to apply for services on behalf of Co-Schemer A's company, Customer A, with Telecommunications Company A. Defendant ANTHONY ROTH and Co-Schemer A then agreed to inflate Customer A's financial statements in an effort to induce Telecommunications Company A to approve the proposed contract.

9.     It was further part of the scheme that defendants DAVID GODWIN and ANTHONY ROTH agreed to split the commission payment with Co-Schemer A

6

for any customer referred to ContinuityX by Co-Schemer A that was later approved for a service contract with Telecommunications Company A. Co-Schemer A later recruited Customers B and C and referred those companies to DAVID GODWIN and ANTHONY ROTH to apply for contracts with Telecommunications Company A.

10.   It was further part of the scheme that defendants DAVID GODWIN and ANTHONY ROTH caused false financial statements pertaining to Customers B and C to be created and provided to Telecommunications Company A.

11.   It was further part of the scheme that defendants DAVID GODWIN and ANTHONY ROTH provided invoices and contracts supporting commission payments owed to ContinuityX from Telecommunications Company A and other telecommunications companies to Victim Company 2 under the accounts receivable financing agreement with Victim Company 2.

12.   It was further part of the scheme that in submitting this information to Victim Company 2, defendants DAVID GODWIN and ANTHONY ROTH falsely represented that Co-Schemer A was a representative of Customer C on a Telecommunications Company A contract and failed to disclose that certain contracts with Telecommunications Company A and other telecommunications companies supporting the invoices were approved through the submission of false financial statements.

13.   It was further part of the scheme that after approximately March 2012, defendant DAVID GODWIN continued to submit invoices to Victim Company

7

2   for   commission   payments   purportedly   owed   to   ContinuityX   by Telecommunications   Company   A,   when   DAVID   GODWIN   knew   that Telecommunications Company A would be attempting to recover certain prior commission payments made to ContinuityX.

14.   It was further part of the scheme that defendant DAVID GODWIN concealed these steps by Telecommunications Company A to recover certain commissions from Victim Company 2.

15.   It was further part of the scheme that defendant DAVID GODWIN recruited defendant JOHN COLETTI to pose as Employee 3 on numerous conference calls with Victim Company 2 between approximately July 25, 2012 and August 20, 2012 to falsely represent to a representative of Victim Company 2 that Telecommunications Company A planned to pay certain past due invoices that had been submitted to Victim Company 2 by ContinuityX.

16.   It was further part of the scheme that shortly before a conference call on July 25, 2012, defendant DAVID GODWIN sent an email to defendant JOHN COLETTI to prepare defendant JOHN COLETTI to fraudulently pose as Employee 3 on the call. The email included the name and false title for Employee 3 and false information regarding the timing of commission payments by Telecommunications Company A.

17. As a result of the scheme, defendants DAVID GODWIN, ANTHONY ROTH and JOHN COLETTI fraudulently obtained on behalf of ContinuityX millions of dollars from Telecommunications Company A and Victim Company 2.

**Telecommunications Company B**

18. It was further part of the scheme that, to satisfy the funds owed to Victim Company 2 as a result of the past due invoices from Telecommunications Company A, defendants DAVID GODWIN and JOHN COLETTI fraudulently obtained an additional approximately $6 million from Victim Companies 1 and 2 under an accounts receivable financing agreement with Victim Companies 1 and 2 based upon fictitious accounts receivables, specifically fraudulent invoices showing payments purportedly owed to ContinuityX by Telecommunications Company B.

19. It was further part of the scheme that defendant DAVID GODWIN falsely represented to Victim Company 1, Victim Company 2, Auditing Firm, Chief Financial Officer 2, investors, and others that ContinuityX was owed millions of dollars by Telecommunications Company B for services purportedly provided for two customers of Telecommunications Company B.

20. It was further part of the scheme that defendant DAVID GODWIN fraudulently caused ContinuityX to create invoices that falsely represented that Telecommunications Company B owed ContinuityX approximately $4 million for services provided for a portion of September 2012 and approximately $8 million for

services provided in October 2012, when defendant DAVID GODWIN knew that these invoices were false.

21.     It was further part of the scheme that defendant DAVID GODWIN fraudulently represented that he needed the invoices prepared in order to provide them to Telecommunications Company B and obtain payment, when defendant DAVID GODWIN knew the amount falsely represented on the invoices was not owed to ContinuityX by Telecommunications Company B and he did not intend to provide the invoices to Telecommunications Company B.

22.     It was further part of the scheme that defendant DAVID GODWIN fraudulently caused the signature of Employee 1 to be forged on a purchase order that represented that Telecommunications Company B owed ContinuityX millions a month for services provided to two customers of Telecommunication Company B, when defendant DAVID GODWIN knew that the signature was unauthorized and a forgery, and that Telecommunications Company B did not owe ContinuityX millions of dollars.

23.     It was further part of the scheme that defendant DAVID GODWIN caused himself to be the point of contact within ContinuityX regarding the false invoices and that defendant DAVID GODWIN worked to prevent ContinuityX, Victim Company 1, and Victim Company 2 representatives, and others from having direct contact with Telecommunications Company B representatives about the false invoices and the millions of dollars purportedly owed to ContinuityX.

10

24.     It was further part of the scheme that defendant DAVID GODWIN fraudulently caused ContinuityX to use the false invoices to Telecommunications Company B as part of an accounts receivable financing agreement with Victim Company 1 and Victim Company 2.

25.     It was further part of the scheme that on or about November 13, 2012, at approximately 9:52 a.m., defendant DAVID GODWIN, in order to conceal the fraudulent nature of the invoices from Auditing Firm, Chief Financial Officer 2 and others, created an email that purported to be from a Telecommunications Company B employee, Employee 2, which falsely represented that the invoices were genuine, and then forwarded that email to Auditing Firm, Chief Financial Officer 2, and others, when defendant DAVID GODWIN knew that Employee 2 did not know about or authorize the email and that the invoices were false.

26.     It was further part of the scheme that defendants DAVID GODWIN and JOHN COLETTI fraudulently arranged a conference call on or about November 13, 2012 at approximately 1:30 p.m., with Auditing Firm, Chief Financial Officer 2, and an individual purporting to be Employee 2 in order for Telecommunications Company to confirm the invoices and to confirm that Telecommunications Company B owed millions of dollars to ContinuityX, when defendants DAVID GODWIN and JOHN COLETTI knew that defendant JOHN COLETTI was going to pose as Employee 2 on the conference call.

27.    It was further part of the scheme that shortly before the conference call on November 13, 2012, at approximately 10:21 a.m., defendant DAVID GODWIN sent an email to defendant JOHN COLETTI to prepare defendant JOHN COLETTI to fraudulently pose as Employee 2 on the call. The email included: (a) the information for the conference call, including the call-in number and access code; (b) the false and fraudulent email purportedly from Employee 2 that defendant DAVID GODWIN forwarded to Auditing Firm and CFO earlier on November 13; and (c) the purchase order that falsely represented that Telecommunications Company B owed ContinuityX millions a month for services provided to two customers of Telecommunications Company.

28.    It was further part of the scheme that on November 13, 2012, at approximately 1:30 p.m., defendant JOHN COLETTI fraudulently posed as Employee 2, participated in a conference call with defendant DAVID GODWIN, Auditing Firm and Chief Financial Officer 2, and falsely represented that Telecommunications Company B owed millions of dollars to ContinuityX.

29.    It was further part of the scheme that on or about November 15, 2012, at approximately 9 a.m., defendant DAVID GODWIN fraudulently sent an email to Victim Company 2 that attached an invoice that falsely represented that ContinuityX was owed approximately $8 million by Telecommunications Company B for services provided in October 2012 and stated that ContinuityX was going to be paid in full by Telecommunications Company B before providing

12

Telecommunications Company B its share pursuant to the joint marketing agreement.

30.     It was further part of the scheme that on or about November 15, 2012, defendants DAVID GODWIN and JOHN COLETTI fraudulently arranged a conference call with Victim Company 2 in order for Employee 2 to confirm that Telecommunications Company owed millions of dollars to ContinuityX, when defendants DAVID GODWIN and JOHN COLETTI knew that Employee 2 was not going to be on the call, and instead defendant JOHN COLETTI was going to fraudulently pose as Employee 2.

31.     It was further part of the scheme that before the conference call on November 15, 2012, at approximately 1:14 p.m., defendant DAVID GODWIN sent an email to defendant JOHN COLETTI to prepare defendant JOHN COLETTI to pose as Employee 2 on the conference call. The email included: (a) the email that defendant DAVID GODWIN sent to Victim Company 2 earlier that same day regarding the payment of the false invoice; (b) the purchase order that falsely represented that Telecommunications Company B owed ContinuityX millions a month for services provided to two customers of Telecommunications Company B, and (c) the invoice that falsely represented that Telecommunications Company B owed ContinuityX approximately $8 million for services provided by ContinuityX.

32.     It was further part of the scheme that on or about November 15, 2012, at approximately 1:18 p.m., defendant JOHN COLETTI fraudulently posed as a

13

Employee 2 and participated in a conference call with defendant DAVID GODWIN and a representative of Victim Company 2, and falsely represented that Telecommunications Company B owed millions of dollars to ContinuityX.

33.     It was further part of the scheme that on or about November 16, 2012, at approximately 9:45 a.m., defendant DAVID GODWIN forwarded the November 13, 2012 email that purported to be from Employee 2 to Victim Company 2 in response to Victim Company 2's request that Telecommunications Company B confirm the false invoices in written form.

34.     It was further part of the scheme that later on or about November 16, 2012, defendant DAVID GODWIN fraudulently caused ContinuityX to enter an accounts receivable financing agreement with Victim Company 1 and Victim Company 2, by signing the agreement on behalf of ContinuityX, in which Victim Company 1 and Victim Company 2 bought the right to collect on certain accounts receivable, including certain invoices that falsely represented that Telecommunications Company B owed ContinuityX over $12 million, when defendant DAVID GODWIN knew that Telecommunications Company B did not owe ContinuityX millions of dollars.  As part of the November 16, 2012 agreement, Victim Company 1 and Victim Company 2 disbursed $6 million for the benefit of ContinuityX, including approximately $2.7 million that was paid directly to a ContinuityX bank account.

14

35.    It was further part of the scheme that, on or about November 22, 2012, to conceal the false nature of the invoices from Chief Financial Officer 2 and others, defendant DAVID GODWIN fraudulently caused ContinuityX to file a Form 10-Q with the SEC for the quarter ending September 30, 2012, and signed the Form 10-Q as CEO, which recognized revenue of approximately $7 million for that quarter, $4 million of which was purportedly from Telecommunications Company, when defendant DAVID GODWIN knew that the revenue purportedly received from Telecommunications Company B was false.

36.    It was further part of the scheme that defendant DAVID GODWIN sent emails to Victim Company 2, investors, and others fraudulently representing that Telecommunications Company B intended to pay ContinuityX millions of dollars on the false invoices, when defendant DAVID GODWIN knew that Telecommunications Company B did not owe ContinuityX millions of dollars, never received the false invoices, and did not intend to pay millions of dollars to ContinuityX.

37.    It was further part of the scheme that in approximately December 2012 and January 2013, when Victim Company 1, Victim Company 2, Chief Financial Officer 2, and others started to inquire about the timing of the payment of millions of dollars from Telecommunications Company B on the false invoices, defendant DAVID GODWIN created emails that purported to be from Employees 1

15

and 2 that falsely stated that Telecommunications Company B intended to pay ContinuityX.

38.     It was further part of the scheme that defendants DAVID GODWIN and JOHN COLETTI fraudulently arranged a conference call on or about January 9, 2013 with ContinuityX's Chief Financial Officer 2 in order for Employee 2 to confirm that Telecommunications Company B intended to pay ContinuityX on the false invoices, when defendants DAVID GODWIN and JOHN COLETTI knew that a Employee 2 was not going to be on the call and instead defendant JOHN COLETTI was going to fraudulently pose as Employee 2.

39.     It was further part of the scheme that on or about January 9, 2013, at approximately 10:53 a.m., defendant JOHN COLETTI fraudulently posed as Employee 2, participated in a conference call with defendant DAVID GODWIN and ContinuityX's Chief Financial Officer 2, and falsely represented that Telecommunications Company B planned to pay the false invoices.

40.     It was further part of the scheme that defendants DAVID GODWIN, ANTHONY ROTH, and JOHN COLETTI concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

41. As a result of the false invoices relate to Telecommunications Company B, defendants DAVID GODWIN and JOHN COLETTI fraudulently obtained on behalf

16

of ContinuityX approximately $6,000,000 from Victim Company 1 and Victim Company 2.

On or about May 10, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
ANTHONY ROTH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, to Chicago, Illinois, by way of a location outside Illinois, namely an email from defendant ANTHONY ROTH to a ContinuityX employee and defendant DAVID GODWIN, which email included fraudulent financial information for Customer B;

In violation of Title 18, United States Code, Section 1343.

17

COUNT TWO

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.      Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.      On or about May 10, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
ANTHONY ROTH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside Illinois, namely an email from a ContinuityX employee to Telecommunications Company A, which email included fraudulent financial information for Customer B;

In violation of Title 18, United States Code, Section 1343.

18

## COUNT THREE

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about May 16, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
ANTHONY ROTH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside Illinois, namely an email from defendant DAVID GODWIN to defendant ANTHONY ROTH seeking additional false financial information for Customer B;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.    Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.    On or about May 18, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
ANTHONY ROTH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, to Chicago, Illinois, from a location outside Illinois, namely an email from defendant ANTHONY ROTH to defendant DAVID GODWIN providing additional fraudulent financial information regarding Customer B;

In violation of Title 18, United States Code, Section 1343.

20

## COUNT FIVE

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about May 21, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
ANTHONY ROTH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside Illinois, namely an email from defendant DAVID GODWIN to Telecommunications Company A, which email included fraudulent financial information for Customer B;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about May 24, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
ANTHONY ROTH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside Illinois, namely an email from defendant DAVID GODWIN to defendant ANTHONY ROTH, which email sought fraudulent financial information for Customer C;

In violation of Title 18, United States Code, Section 1343.

22

## COUNT SEVEN

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about May 25, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
ANTHONY ROTH,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, to Chicago, Illinois, from a location outside Illinois, namely an email from defendant ANTHONY ROTH to defendant DAVID GODWIN, which email included fraudulent financial information for Customer C;

In violation of Title 18, United States Code, Section 1343.

23

## COUNT EIGHT

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about July 25, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN, and
JOHN COLETTI,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, to Chicago, Illinois, from a location outside Illinois, namely an email from defendant DAVID GODWIN to defendant JOHN COLETTI, which email included false information about Employee 3 and Telecommunications Company A's payment;

In violation of Title 18, United States Code, Section 1343.

24

## COUNT NINE

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about October 19, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, to Chicago, Illinois, by way of a location outside Illinois, namely an email from ContinuityX's CFO to defendant DAVID GODWIN, which email included fraudulent ContinuityX invoices that represented that Telecommunications Company B owed ContinuityX millions of dollars;

In violation of Title 18, United States Code, Section 1343.

## COUNT TEN

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about November 13, 2012, at approximately 9:52 a.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside of Illinois, namely an email from defendant DAVID GODWIN to Auditing Firm and others, which email forwarded an email that purported to be from Employee 2 regarding the false invoices;

In violation of Title 18, United States Code, Section 1343.

## COUNT ELEVEN

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about November 13, 2012, at approximately 10:21 a.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN and
JOHN COLETTI,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside of Illinois, namely an email from defendant DAVID GODWIN to defendant JOHN COLETTI, which email included information about the false invoices and a conference call with Auditing Firm and others on November 13, 2012;

In violation of Title 18, United States Code, Section 1343.

27

## COUNT TWELVE

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about November 15, 2012, at approximately 9 a.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN and
JOHN COLETTI,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside of Illinois, namely an email from defendant DAVID GODWIN to Victim Company 2, which email fraudulently represented that Telecommunications Company B was going to pay the false invoices;

In violation of Title 18, United States Code, Section 1343.

28

## COUNT THIRTEEN

The SPECIAL AUGSUT 2015 GRAND JURY further charges that:

1.      Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.      On or about November 15, 2012, at approximately 1:14 p.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN and
JOHN COLETTI,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside of Illinois, namely an email from defendant DAVID GODWIN to defendant JOHN COLETTI, which email included information about the false invoices;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOURTEEN

The SPECIAL AUGUST 2015 GRAND JURY further charges that:

1.     Paragraphs 1 through 41 of Count One of this indictment are incorporated here.

2.     On or about November 16, 2012, at approximately 9:45 a.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GODWIN and<br>
JOHN COLETTI,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, and signals, from Chicago, Illinois, to a location outside of Illinois, namely an email from defendant DAVID GODWIN to Victim Company 2, which email forwarded a fraudulent email that purported to be from Employee 2;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIFTEEEN

The SPECIAL AUGUST 2015 GRAND JURY further charges:

1.      Paragraphs 1(a), (b), (d), (e), (j), (k), (m), (n), (p), and (q) of Count One of this indictment are incorporated here.

2.      At times material to this indictment:

a.      The Federal Bureau of Investigation was investigating possible violations of federal criminal law in connection with David Godwin's fraudulent submission of false invoices to Victim Company 1 and 2, which reflected that Telecommunications Company B owed millions of dollars to ContinuityX.

b.      The following matters, among others, were material to that investigation:

- whether defendant JOHN COLETTI knew of the invoices in 2012; and

- what defendant JOHN COLETTI knew about the invoices in 2012.

3.      On or about July 2, 2013, at Los Angeles, California, in an interview being conducted by agents of the Federal Bureau of Investigation, in relation to an investigation being conducted in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN COLETTI,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the

31

Government of the United States, when in substance he stated that: he first learned of invoices reflecting that ContinuityX was owed millions by Telecommunications B in 2013.

In violation of Title 18, United States Code, Section 1001(a)(2).

## FORFEITURE ALLEGATION

The SPECIAL AUGUST 2015 GRAND JURY further alleges:

1.     The allegations contained in this indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     As a result of the violations of Title 18, United States Code, Section 1343, as alleged in Counts One through Fourteen of this indictment,

DAVID GODWIN,
JOHN COLETTI, and
ANTHONY ROTH,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property constituting, and derived from, and traceable to, proceeds obtained, directly or indirectly, as a result of defendants' violations of Title 18, United States Code, Section 1343, including approximately at least $8,000,000.

3.     If any of the forfeitable property described above, as a result of any act or omission by the defendants:

     a.     Cannot be located upon the exercise of due diligence;

     b.     Has been transferred or sold to, or deposited with, a third party;

     c.     Has been placed beyond the jurisdiction of the Court;

     d.     Has been substantially diminished in value; or

e.    Has been commingled with other property which cannot be

divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property

under the provisions of Title 21, United States Code, Section 853(p), as incorporated

by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title

28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. 515

34